Oniof Justice- Hobisrtsom,
delivered the opinion of the court.
A paper purporting to be the last wilt of Walter Shropshire, dated November 2d, 1828, was-offered for probate, to the county court of Harrison, and was rejected.' On a writ of error to this court,. . the judgment to the- county court was affirmed. Afterwards, another paper, dated November 1st, 1828, was offered to the same county court for probate, as the last will of Walter. Shropshire; and that" having been also rejected, this writ of error is prosecuted to reverse the order of the county court.
As the proof of a formal publication, in conformity to law, is ample and sufficient, the principal point, of controversy is as to the capacity of the testator. The witnesses on each side were nearly equal in number, and were generally intelligent. Those introduced to-prove incapacity, generally expressed the opinion that the testator had no t a disposing mind; and swore to facts. which tended strongly to fortify that opinion. The witnesses on the other side, whilst they admitted that the testator’s mind .was always weak, and had, for some time prior to November,. 1828, become impaired by old age and disease, testified .that, in their opinion, he. had sufficient discretion to make a will, and proved some facts tending, in some degree, to authorize that inference. When the testimony,. in all its properties and bearings, is carefully scrutinized, and .weighed, the scales are so nearly in equilibrio, that the preponderance, if there be any, is not easily ascertained. The proof is.substantialiy the same as that made, in-the. former case; perhaps it is not, in every respect, quite as -fall against the. will, and may be somewhat stronger in support of it. But although the onus devolved on the party opposing the will,- and although the character or quantum of the testator’s mind .has not been clearly defined; nevertheless, we are inclined, as., on the former trial, to. affirm the judgment of the county court.
For more than a year preceding November, 1828, .the testator had been visibly declining in body and ip *92 mind; tbc natural consequence of old age and affliction^ He was upwards of 70 years old; and his disease was a general dropsej1-. He was occasionally childish and flighty. He had become very credulous awl capricious, and frequently, without any known or apparent cause, shed tears. He complained to many of his neighbors that his relations were teasing and harrassing him about the disposition of his estate, and distracted his tranquility by their importunities. His estate was large, and he had no children, but had a wife and several brothers and sisters. He sometimes complained, in a’purile and even pitiable manner, that Ms friends were in competition for bis estate — his wife on one side, and some of his brothers on the other. In relation to the disposition of his estate he seemed to be irresolute and changeful. In Ms best and brightest days, he was considered barely compos mentis, and never made an important trade without the counsel and intervention of a friend.
If the testator have not sufficient mind,or a mind iir a proper state, to dispose of his “with.reason,” or according settled purpose of his own, he fentTo^makc a will,
*92 During the progress of his disease, he had published several last wills; in one of which, dated in the winter of 1828, and which was also rejected hy the county court, he devised his whole estate to his wife, during her life, lie sometimes expressed dissatisfaction with that will, because it was not sufficiently bountiful to his wife. Although be lived in Harrison, and was scarcely able to ride, the -wills of November, 1828, were written and published at one of his brothers, in Clark. They were written by one of them; others of them and one of them from Harrison being present. These papers devise to his wife only a third of his estate, during her life; and disinherit two of Ms brothers, for an alleged cause which should not have influenced a mind vigorous and self willed. Without recapitulating the evidence, or reasoning upon deductions from it, the foregoing general considerations, with otheis which need not be detailed, incline us to the opinion that the testator had not a disposing mind; or that if he even had, it was not in a disposing state, lie had not lost all memory, nor all reason. He was not entirely superanuated, nor was he absolutely slidtus or fatuus. But all the facts combined tend to show that he had not “a sound memory,” nor sufficient mind, or a mind in a proper state for disposing of Ms esta ie “with reason” or according to *93 ¡any fixed judgment, or settled purpose of his own, This we consider the true test, established, not only by philosophy, but by law.
The subscribing witnesses expressed the opinion that the testator had sufficient discretion to make a will at the time of publishing the paper now under consideration. And tuey proved that he assigned some reasons for. pretermitting one brother and the family oí another who was dead. Other witnesses swore that he repeated those reasons in substance on other occasions.
But .these and similar facts, which of themselves and alone, would tend to establish a disposing mind, are, in our opinion, explained and overruled by opposing facts and by tne general complexion of the whole case as exhibited by ail the proof
The testator was, in the language of I.ovelace on wills, “easily made to believe things incredible or impossilied'’ And, although he often conversed rationally on subjects familiar to him, ho was in the habit, whenmosi lucid, of repeating and forgetting, and sometimes talked of visionary and impracticable speculations. His purposes, even as to his last will, seemed frequently to change with changes of scene, association or company, lie had not been, for sometime, competent to the management of his own affairs; was considered, or seemed to have been considei ed incompetent by some of his brothers, his wife, and many of his most intimate and intelligent neighbors and acquaintances. Some of his brothers, if not all, according to some proof in the case, expressed the opinion that he had not sufficient capacity to make a valid will. The will made in the winter of 1828, was procured, according to proof, by improper practices on the v eakness and credulity of the testator;' and there is some intimation in the evidence, that the Clark wills were deemed, by some of those interested in them, as proper expedients for overreaching that made in the winter, which they considered invalid, for want of capacity at the time it was acknowledged. The testator expressed dissatisfaction with all the wills, and frequently manifested a desire to make another. On one occasion he proposed to an acquaintance to draw a will, devising the bulk of his estate to his wife, and the residuum to himself, (the acquaintance.) At *94 one time he was made to believe a slander on his wife, the most foul and incredible, and without any evidence.
Clay and Chinn, for plaintiffs; Crittenden and Wail, for defendants.
The causes which affected the sanity of his mind, zeere permanent and progressive.
Without amplifying, we feel authorized to conclude, that the paper of November 1st, 1828, is not “THE WILL” of Walter Shropshire; or in other words, that it is not the production of a sound mind'acting freely,, and capable of acting judiciously and independently.
We do not impute to the brothers of the testator any corrupt or dishonorable artífice or influence. All that we say on that subjec-t is, that whilst the wife was solicitous that a will should be made in oneway,they were anxious that a will should be made in another way; and that Walter Shropshire himself was passive, solicitious.. only to be relieved from importunity, and scarcely, if at all, capable of making any will under any, even the most propitious circumstances.
Such a will should not, in our opinion, stand. Whilst every free person of sound and legal discretion should have a perfect'right to devise his property to whomsoever he may prefer, care should be taken that imbecility and credulity shall not be imposed on. The la w makes a just distribution, post mortem, of the estate of intestates. Femes covert, minors under prescribed ages, persons of unsound minds, are not, therefore, permitted to make wills, because it is deemed safer that the property of such persons should be distributed by the law, than by any ostensible act of themselves.
We cannot believe that Walter Shropshire was, at' any time in 1828, as competent to make a will as an ordinary boy, only twelve years old would-have been; and we do believe, that he was so harrassed by disease and" by the conflicting counsel and guardianship of others, that he was incapable of any matured, fix.ed or self-determined purpose, satisfactorily to himself, in reference to a last testament. And that consequently, the “animus testandi,” the soul of a will, has not animated the form of a testament now before us.
Wherefore, the order o f the county court, rejecting the paper of November 1st, 1828, is affirmed.